CAUSE NO. 296-06050-2022

| | | |
|---|---|---|
| **ARCADIA ANESTHESIA, P.A.** | § | **IN THE DISTRICT COURT** |
| **and** | § | |
| **SURESH VALLOPPILLIL, M.D.** | § | |
| *Plaintiffs,* | § | |
| | § | **296TH JUDICIAL DISTRICT** |
| **v.** | § | |
| | § | |
| **TU XUAN DAO, M.D.,** | § | |
| **ORTHOMED STAFFING, LLC, and** | § | |
| **MULTIPLAN, INC.** | § | |
| *Defendants.* | § | **COLLIN COUNTY, TEXAS** |

## PLAINTIFFS' SECOND AMENDED PETITION

Plaintiffs, Arcadia Anesthesia, P.A. ("Arcadia") and Suresh Valloppillil, M.D., ("Dr. Valloppillil") (collectively "Plaintiffs") file this Second Amended Petition against Defendants Tu Xuan Dao, M.D. ("Dao"), OrthoMed Staffing, LLC ("OrthoMed") and Multiplan, Inc. ("MultiPlan") (collectively "Defendants"), and in support thereof would show the Court as follows:

## I.  DISCOVERY CONTROL PLAN

1.  Plaintiffs intend to conduct discovery in this matter under a Level 3 discovery control plan consistent with Tex. R. Civ. P. 190.4.

## II.  RULE 47 STATEMENT

2.  Pursuant to Tex. R. Civ. P. 47, Plaintiffs seek monetary relief over $1,000,000.

## III.  THE PARTIES

3.  Plaintiff Arcadia Anesthesia, P.A. is a Texas professional association with its principal place of business located at 5808 Caladium Drive, Dallas, Texas 75230.  It may be served though its counsel of record.

4.  Plaintiff Suresh Valloppillil, M.D. is an individual residing in the City of Dallas, Dallas County, Texas. He may be served through his counsel of record.

1

5.   Defendant, Tu Xuan Dao, M.D. is an individual residing at 5601 Champions Drive, Plano, Texas 75093. Dao has answered and appeared in this matter.

6.   OrthoMed Staffing, LLC, is a Texas limited liability company with its principal place of business located at 5601 Champions Drive, Plano, Texas 75093. OrthoMed has answered and appeared in this matter.

7.   Multiplan, Inc., is foreign for profit company, systematically, and continuously doing business in the State of Texas. Its registered agent to effectuate service of process is on file with the Texas Secretary of State as Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 USA, and Multiplan, Inc.'s attorney, Blake A. Bailey of Phelps Dunbar LLP blake.bailey@phelps.com, E. State Highway 114, Suite 207, Southlake, TX 76092, who has agreed to accept service.

## IV. JURISDICTION AND VENUE

8.   Subject matter jurisdiction is proper in this Court because the amount in controversy is within its jurisdictional limits.

9.   This Court has jurisdiction over the Defendants because all Defendants reside in Texas and/or as a substantial amount of the items giving rise to the claim at issue occurred in Texas.

10. Venue is permissive in Collin County under Section 15.002(a)(1) and (2) of the Texas Civil Practice and Remedies Code because (1) all or a substantial part of the events or omissions giving rise to the claims described in this Petition occurred in Collin County, Texas, and (2) Defendants reside in Collin County, Texas.

## V. FACTS

11. On or about May 8, 2013, Dr. Valloppillil created Arcadia Anesthesia P.A. Arcadia is a professional association providing anesthesia services to patients undergoing medical procedures

throughout the Dallas Forth-Worth Metroplex. Dr. Valloppillil is the sole member and director of Arcadia. Defendant Dao has never been a member or manager of Arcadia.

12. After the creation of Arcadia, on or about April 19, 2016, Dr. Valloppillil and Defendant Dao created a new anesthesia company, Arcadia Anesthesia Partners, PLLC ("Arcadia Partners") in which Dr. Valloppillil and Defendant Dao, each served as managing members. As with Arcadia, Arcadia Partners was created with the purpose of providing anesthesia services to patients undergoing medical procedures throughout the Dallas Forth-Worth Metroplex.

13. Defendant Dao additionally subsequently created OrthoMed Staffing, LLC, a company providing anesthesia care, in which Defendant Dao is a managing member in addition to Alex Dao, Defendant Dao's wife.

14. In January of 2021, Defendant Dao called a meeting of Arcadia Partners in which Defendant Dao notified Dr. Valloppillil that he desired to end the partnership of Arcadia Partners, effective April 1, 2021.

15. Due to Defendant Dao's decision to end Arcadia Partners, in April of 2021, Dr. Valloppillil left Arcadia Partners and continued working solely for Arcadia, as he had been prior to the creation of Arcadia Partners. At that point, Arcadia Partners ceased handling cases, and all patients were either seen by Dr. Valloppillil and Arcadia or Defendant Dao and OrthoMed. For various reasons, including at least one orthopedic surgeon choosing to work with Arcadia instead of OrthoMed, Defendant Dao and Dr. Valloppillil's relationship soured.

16. Arcadia is an out-of-network provider with many third-party payors for the services it provides to its patients.  Plaintiffs hired, as its agent, an entity called Anesthesia Services, to handle billing for it.  In the medical billing world, medical practices do not directly work with insurance companies.  Rather they work with a third-party-commercial payors, Defendant,

MultiPlan, Inc. ("MultiPlan") to interface with the providers, such as Arcadia (and its billing agent), and negotiate payment amounts for Arcadia's services.

17. MultiPlan subsequently establishes a "secure" on-line portal where providers can access their claims and approve or disapprove of the reimbursements offered by the commercial payor by creating a digital signature. MultiPlan advertises on its website to provide its customers (which includes Plaintiffs) with an online portal that "...is secure and completely web-based with no downloads required or software to install." More specifically, Plaintiffs would, through its billing agent, submit a bill for services. MultiPlan then negotiates with the insurance company to offer what the insurance company is willing to pay. The provider (such as Plaintiffs) can accept that offer or counter back. MultiPlan, once a price for services is agreed upon, MultiPlan submits a payment to the provider.

18. Beginning on or about August 11, 2021, through December of 2021, an unknown person and/or entity, began to wrongfully access the "secure" MultiPlan billing portal and fraudulently pretending to be Plaintiffs' agent and negotiated or accepted extremely low reimbursement rates with third-party payors causing significant damages to Plaintiffs. For instance, Plaintiffs may have submitted a bill for $4,000, Multiplan offered $3,500, but the hacker would instead "accept" only $500.

19. Plaintiffs and its agent discovered and believes that over 100 claims were approved through or by MultiPlan and its online portal at unreasonably low reimbursement rates—rates that neither Arcadia nor Plaintiffs have approved and would not approve. Negotiation on the unauthorized claims were made through the MultiPlan portal fraudulently representing themselves to be, and signing as, Sue Elias (an employee of Anesthesia Services, the billing

agent) and Alma Jeffs (a former employee of Anesthesia Services, Plaintiffs' billing agent, who recently retired and never accessed the portal or signed any claims on behalf of Plaintiffs).

20. Plaintiffs and its agent investigated the fraudulent activity and discovered Defendants Dao and OrthoMed are the actors accessing MultiPlan's billing portal fraudulently, wrongfully, and without authorization.  As part of this investigation, Plaintiffs obtained the Internet Protocol ("IP") address used by the fraudulent third party(ies) to access the billing portal and digitally sign and accept the low reimbursement rates. Plaintiffs further obtained information identifying the dates, times, and IP addresses used to access the online portal, approve the low rates, and create the required digital signatures to approve the low rates.

21. . After obtaining the IP addresses, Plaintiffs learned that the Multiplan platform had been fraudulently accessed by Defendants, who impersonated themselves to be Plaintiffs' agents.  The IP addresses directly match the home address and office address of Defendants.  Plaintiffs further learned that MultiPlan's platform is not fully secure and can permit this type of access.  But for the fraudulent access to the MultiPlan platform and MultiPlan's platform lack of security, Plaintiffs would not have sustained damages.

22. Defendants' unlawful and negligent actions also caused long term damages to Plaintiffs by way of lost profits due to the negotiation of reimbursement rates by Defendants, that never would have been negotiated or accepted by Plaintiffs. It is Plaintiffs' belief that reimbursements offered by the commercial payor in the billing portal, are based on an algorithm that largely considers what reimbursements have historically been accepted by the payee. Because the historical data was grossly skewed by Defendants' fraudulent access and negotiations, Plaintiffs will sustain additional damages in the future, as the reimbursement offers received by the

Multiplan platform are be substantially lower than they would have been but for the wrongful acts of Defendants.

23. Defendants' actions were fraudulent, unauthorized, and intentional. Based on the actions required to enter MultiPlan's billing portal, it would be unlikely, if not impossible, for a person to accidently negotiate reimbursement rates for the wrong party. Specifically, Defendants would have had to physically type Elias' and/or Jeffs' name and title into the billing portal and check a box confirming they are authorized to make reimbursement offers on behalf of Arcadia and/or Plaintiffs. Accordingly, Defendants unauthorized access of MultiPlan's billing portal and negotiation of low reimbursement rates was knowing and/or intentional, and the damage caused to Plaintiffs because of Defendants wrongful acts was intended. Further, had Multiplan used a commercially standard dual factor authentication, verbal authentication, or other standard "secured" systems, this access would not have been as likely to occur.

## VI. CAUSES OF ACTION

### Count One: Harmful Access by Computer Act ("HACA") – Defendants Dao and OrthoMed

24. Plaintiffs incorporate and reassert each and every allegation in the preceding paragraphs.

25. Pursuant the Harmful Access by Computer Act, codified as Chapter 143 of the Texas Civil Practice and Remedies Code, "[a] person who is injured or whose property has been injured as a result of a violation under Chapter 33, Penal Code, has a civil cause of action if the conduct constituting the violation was committed knowingly or intentionally."

26. Among other violations, § 33.02 of the Texas Penal Code provides that a person commits an offense when "the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."

27. In line with the statutory elements, Texas has explained a violation of the Harmful Access by Computer Act as consisting of: (1) an individual knowingly and intentionally accessed their computer, computer network, or computer system; (2) the individual did not have the effective consent of the owner to do so; and, (3) the owner suffered damages as a result.

28. Defendants intentionally and/or knowingly accessed Plaintiffs' accounts on the Multiplan's billing portal (the computer, computer network, or computer system), without the effective consent of Plaintiffs or its billing agent, and Plaintiffs suffered damages as a result in the way of lost profits for fraudulent negotiation of extremely low reimbursement rates and affecting Plaintiffs' future algorithm and the offered rates by providers in future billing negotiations.

29. Furthermore under § 143.002 of the Texas Civil Practice and Remedies Code, a person who establishes a cause of action under Chapter 143 is entitled to reasonable attorneys' fees and costs, in addition to actual damages. Because Defendants violated § 143.001 of the Texas Civil Practice and Remedies Code through knowingly and/or intentionally injuring Plaintiffs through unauthorized access of Plaintiffs' billing portal account, Defendants are liable for reasonable attorneys' fees and costs.

**Count Two:  Computer Fraud and Abuse Act ("CFAA") – Defendants Dao and OrthoMed**

30. Plaintiffs incorporate and reassert each and every allegation in the preceding paragraphs.

31. Pursuant to the Computer Fraud and Abuse Act codified as 18 U.S.C. § 1030(g), "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages" if the loss during any 1-year period aggregates at least $5,000 in value. The aggregate loss is defined to include "the cost of responding to an offense, conducting a damage assessment, and restoring the data, program,

system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages."

32. Pursuant to 18 U.S.C. § 1030(a)(2) it is a violation when a person "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer."

33. Additionally, it is a violation of 18 U.S.C. § 1030(a)(4) when a person "(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or (C) intentionally accesses  a protected computer without authorization, and as a result of such conduct, causes damage and loss."

34. Here, Defendants intentionally accessed Plaintiffs' billing portal account without authorization and obtained information from the computer regarding Plaintiffs' billing practices, patients, services, and reimbursement rates.

35. Additionally, and/or alternatively, Defendants knowingly transmitted exceedingly low billing reimbursement requests, and as a result of their conduct intentionally caused damage to Plaintiffs. Defendants further intentionally accessed Plaintiffs' billing portal account without authorization and recklessly caused damage to Plaintiffs.  Lastly, Defendants intentionally accessed Plaintiffs' billing portal account without authorization causing damage and loss to Plaintiffs.

36. Defendants are liable for the damage to Plaintiffs caused by their conduct, including, but not limited to, Plaintiffs' injuries of lost profits by Defendants fraudulent and unauthorized

negotiation of extremely low reimbursement rates, and the further effects on Plaintiffs' profits by deflating the expected reimbursement offers by providers in future billing negotiations.

### Count Three: Conspiracy – Defendants Dao and Defendant, OrthoMed

37. Plaintiffs incorporate and reassert each and every allegation in the preceding paragraphs.

38. A civil cause of action for conspiracy exists when two or more persons, with an object to be accomplished, have a meeting of minds on the object or course of action, one or more or which is an unlawful, overt act, and proximately causes damage.

39. Defendant Dao and OrthoMed are members of a combination of two or more persons/entities who had a meeting of the minds to accomplish an unlawful purpose or lawful purpose by unlawful means. These unlawful acts include violations of the Harmful Access to Computer Act and Computer Fraud and Abuse Act through the unauthorized and fraudulent access of Plaintiffs' billing portal to negotiate extremely low reimbursement rates. Defendants each committed the unlawful acts described above to further their unlawful objectives. As a proximate result of their acts, Plaintiffs have suffered damages.

### Count Four: Breach of Fiduciary Duty –Defendant Dao

40. Plaintiffs incorporate and reassert each and every allegation in the preceding paragraphs.

41. Pursuant to Section 101.401 of the Texas Civil Practice and Remedies Code, members and managers owe fiduciary duties to each other in addition to the company. These duties were not altered by the Operating Agreement and include the duties of loyalty, good faith, candor, to refrain from self-dealing, to act with integrity, to engage in fair and honest dealings, and of full disclosure.

42. Stated in full above, Dr. Valloppillil and Defendant Dao were previously managing members of Arcadia Anesthesia Partners, PLLC, thereby creating a fiduciary relationship between them.

43. By virtue of their membership in Arcadia Partners, Defendant Dao owed his fellow member, Dr. Valloppillil, duties of loyalty, good faith, candor, to refrain from self-dealing, to act with integrity, to engage in fair and honest dealings, and of full disclosure.

44. Defendant Dao breached each of the above-stated duties through the actions described herein, through his fraudulent acts and intentionally harming Dao. Defendant Dao's breach of these duties proximately caused Plaintiff, Valloppillil, to sustain injuries.

**Count Five: Identity Theft Declaration and Texas Deceptive Trade Practices Act—Defendants Dao and Defendant, OrthoMed**

45. Plaintiffs hereby requests that this Court issue a declaration under Texas Business & Commerce Code §521.101 that they, and/or their agents, were victims of identity theft as they were damaged by violations of §521.051 and under §32.51 of the Texas Penal Code.

46. Per Texas Business & Commerce Code §52.101, a violation of the statute is also actionable as a Texas Deceptive Trade Practices Act violation, entitling Plaintiffs to actual and treble damages.

**Count Six:  Deceptive Trade Practices Act Violations – All Defendants**

47. Plaintiffs hereby bring a cause of action against Defendant MultiPlan, for violations of the Texas Deceptive Trade Practices Act (the "DTPA").  Plaintiffs are consumers having purchased and acquired services from MultiPlan.  MultiPlan advertised on its website and to is

customers to provide, "portal is secure and completely web-based with no downloads required or software to install."

48. Plaintiffs hereby bring a cause of action against Defendants Dao and OrthoMed for violations of the DTPA (specifically the identity theft tie in statutes listed in Count Five).

49. Defendant is in the business of selling and advertising can be sued under the DTPA.

### i.  Laundry List Violations– Defendant, Multiplan

50. Defendant violated §17.46(b)(2) by causing confusion or misunderstanding about the source, sponsorship, approval, or certification of goods or services

51. Defendant violated §17.46(b)(5) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities they do not have.

52. Defendant violated §17.46(b)(12) by representing that an agreement confers or involves rights, remedies, or obligations that it does not, or that are prohibited by law.

53. Defendant violated §17.46(b)(20) by representing that a guaranty or warranty confers or involves rights or remedies that it does not.

54. Defendant violated §17.46(b)(23) by failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information has been disclosed.

55. Plaintiffs relied on Defendant's false, misleading, and/or deceptive acts and practices to its detriment.

### ii. Tie-In Statute

56. Defendants Dao and Defendant OrthoMed are liable under the DTPA for violations of the tie in statute set forth in Count 5.

## Count Seven: Negligence – Defendant MultiPlan

57. MultiPlan advertised a "secure" on-line portal where providers can access their claims and approve or disapprove of the reimbursements offered by the commercial payor by creating a digital signature.

58. Beginning on or about August 11, 2021, through December of 2021, Defendants Dao and OrthoMed, began to wrongfully access the electronic "secure" MultiPlan billing portal, impersonating Plaintiffs' billing agent.

59. Plaintiffs hereby brings a cause of action of negligence against Defendant, MultiPlan. Defendant owed a duty to Plaintiffs to provide a secure online billing portal and MultiPlan breached that duty.  Specifically, (i) MultiPlan did not provide a Two-factor authentication test (2FA), sometimes referred to as two-step verification or dual-factor authentication, (ii) MultiPlan did not require a security process in which users provide two different authentication factors to verify themselves (iii) MultiPlan did not protect Plaintiffs' credentials and the resources the user can access, (iv) MultiPlan did not follow industry standard protocols for access to billing and financial services, and (v) MultiPlan permitted unauthorized third parties to access Plaintiffs accounts.

60. Plaintiffs are further certain other elements of negligence will come to light once MultiPlan produces documents and discovery which thus far MultiPlan refused to do. Defendant's negligence damaged Plaintiffs, for which it seeks actual and exemplary damages.

## VII. EXEMPLARY DAMAGES

61. Plaintiffs incorporate and reassert each and every allegation in the preceding paragraphs.

62. Plaintiffs allege that Defendants' conduct constitutes conduct for which the Texas Civil Practice and Remedies Code allows the imposition of exemplary damages for the reason that the

harm resulted from fraud, malice, and/or gross negligence. Defendants' acts were performed knowingly, willfully, maliciously, and with conscious indifference. Accordingly, Plaintiffs request that exemplary damages be awarded against Defendants in a sum to be determined by the trier of fact.

## VIII. PUNITIVE DAMAGES

63. Plaintiffs incorporate and reassert each and every allegation in the preceding paragraphs.

64. Plaintiffs seek punitive damages in excess of the statutory limitations due to Defendants violations of Texas law including but not limited to Section 33 of the Texas Penal Code.

## IV. TREBLE DAMAGES

65. Plaintiffs seek treble damages as permitted by the DTPA.

## IX. INTEREST and ATTORNEY'S FEES

66. Plaintiffs' hereby request an award for pre- and post- judgment interest at the statutory rate of eight point five percent (8.5%)

67. Plaintiffs' further request an award for all of their reasonable and necessary attorney's fees and expenses.

## X. PRAYER

68. For the reasons stated in this Petition, Plaintiffs pray that Defendants be cited to appear and answer, and that upon final trial of this matter, the Court award judgment in favor of Plaintiffs for:

      a.  Plaintiffs' actual and consequential damages;

      b.  Exemplary and punitive damages in excess of the statutory limitations;

      c.  Treble damages under the DTPA;

      d.  Plaintiffs' costs and expenses incurred in this lawsuit;

e.   Plaintiffs' reasonable and necessary attorneys' fees;

f.   Pre- and post-judgment interest at the maximum rate allowed by law; and

g.   Any further relief to which Plaintiffs show themselves justly entitled.

Respectfully Submitted,

**LAW OFFICES OF WELSH & KAMPAS, PLLC**

By:      /s/Christopher Welsh
Christopher B. Welsh
State Bar No. 24049538
4925 Greenville Ave.
Suite 200
Dallas, Texas 75206
(214) 800-5164
(214) 884-5165 - fax
*Attorney for Plaintiffs,*
*Arcadia Anesthesia, P.A. and*
*Suresh Valloppillil, M.D.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this document has been served on this 17th day of April 2024:

Lu Pham
State Bar No. 15895430
lpham@phamharrison.com
Spencer M. Mainka
State Bar No. 24116707
smainka@phamharrison.com
Pham Harrison, LLP
505 Pecan Street, Suite 200
Tindall Square Building No. 2
Fort Worth, Texas 76102
Telephone: (817) 632-6300
*Attorneys For Defendants,*
*Tu Xuan Dao, M.D and*
*Orthomed Staffing, LLC*

By:     /s/Christopher Welsh
        Christopher B. Welsh